# PALMER BIEZUP & HENDERSON LLP

COUNSELORS AT LAW

| PENNSYLVANIA | 1223 FOULK ROAD | NEW YORK |
|---|---|---|
| 620 CHESTNUT STREET, SUITE 956 | WILMINGTON, DELAWARE 19803 | 140 BROADWAY, 46TH FLOOR PMB 46030 |
| PHILADELPHIA, PENNSYLVANIA 191063409 | | NEW YORK, NEW YORK 10005 |
| 215 625 9900 | 302 594 0895 • 302 478 7443 | 212 406 1855 |
| FAX: 215 625 0185 | FAX: 302 478 7625 | FAX: 212 858 7651 |
| | pbh@pbh.com | |
| MARYLAND | | NEW JERSEY |
| 222 PRINCE GEORGE STREET, SUITE 102 | | 200 NORTH FIFTH STREET |
| ANNAPOLIS, MARYLAND 21401 | | CAMDEN, NEW JERSEY 08102-1204 |
| 410 267 0010 | | 856 428 7717 |
| FAX: 410 267 0020 | | FAX: 856 338 1008 |

MICHAEL B. MCCAULEY
PARTNER
mccauley@pbh.com

January 10, 2006

The Honorable Gregory M. Sleet
United States District Judge
J. Caleb Boggs Federal Building
844 N. King Street, Room 4324
Lockbox 19
Wilmington, DE 19801

    Re:    Wilmington Tug, Inc. v. M/V CLARY and Clary Shipping Co.,
            C.A. No. 1:06-cv-00015
                and
            In the Matter of the Complaint of Clary Shipping (Pte.) Ltd.
            C.A. No. 1:06-cv-
            <u>Our File: 9439-015</u>

Dear Judge Sleet:

       We represent the Plaintiff Wilmington Tug, Inc. and its insurer ACE-INAMAR in C.A. No. 1:06-cv-00015, which we understand has been reassigned from Judge Robinson to Your Honor.

       At 10:00 a.m. on Friday, January 6, 2006, the freighter M/V CLARY, while inbound in the Christina River, struck and caused serious damage to three tug boats owned by Wilmington Tug which were moored and stationary at their usual berth at Wilmington Marine Terminal. The collision occurred in broad daylight and clear weather conditions. The CLARY is a foreign owned and flagged vessel (Singapore) and on information and belief is the sole asset of its registered owner, Clary Shipping (Pte.) Ltd.

       Wilmington Tug has a valid maritime lien against the M/V CLARY itself, *in rem*, for the collision and resulting damages. Wilmington Tug filed its suit against the vessel *in rem* on January 6, 2006 (C.A. No. 1:06-cv-00015, the "Arrest Action"). The CLARY was arrested at the Port of

Wilmington by the U.S. Marshal on January 6, 2006 pursuant to the Court's Order (Chief Judge Robinson) and Rule C of the Admiralty Rules to enforce the maritime lien and to secure *in rem* jurisdiction over the vessel. The vessel presently remains under arrest and subject to the Court's *in rem* jurisdiction.

The court properly acquired and currently has *in rem* jurisdiction over the CLARY by virtue of the arrest. The release of the vessel from the arrest and its departure from this District without requiring the Owner to substitute security (*res*) for the vessel (or surrender it for judicial sale) would destroy this court's *in rem* jurisdiction over the vessel validly obtained by Wilmington Tug. The court would be relinquishing federal admiralty jurisdiction over the vessel which it properly possesses.

On Monday, January 9, 2006, the owner of the CLARY filed a separate civil action in this Court invoking the U.S. Limitation of Liability Act, 46 U.S.C. § 181, et seq. (C.A. No. 1:06-cv-___, the "Limitation Action"). The Owner has requested the Court to enter a restraining order enjoining all other suits against the Owner. We understand that counsel for the Owner of the CLARY has or will request an emergency hearing before Your Honor today.

The filing of the limitation action will stay Wilmington Tug's *in rem* claim against the vessel. However, if the limitation is ultimately denied, the stay will be lifted, and Wilmington Tug will be able to continue its *in rem* action against the CLARY.

The issues in the Limitation Action relate primarily to the vessel owner's personal liability– pursuant to the statute, the owner will seek to limit its *in personam* liability for any and all claims arising out of the incident to the value of the vessel and any pending freight (claimed to be $3 million) by attempting to prove that it lacked personal "privity and knowledge" with respect to the negligence and fault which caused the collision. In contrast, the Arrest Action filed by Wilmington Tug is a direct *in rem* claim against the vessel itself to secure Wilmington Tug's valid maritime lien.

The Owner of the CLARY could have obtained the release of the vessel unilaterally by the filing of a bond or by surrendering the vessel to the court for judicial sale (See Rule E of the Admiralty Rules). It chose not to do so.

Wilmington Tug has not demanded a bond as security for the release of the vessel from arrest and has agreed to accept a simple unsecured "letter of undertaking" from the vessel's insurers to confirm that they will pay a judgment against the vessel *in rem* only if and in the event that a judgment is rendered in the Arrest Action. Wilmington Tug has also informed the Owner's counsel that it agrees to submit and prosecute its claims against the vessel and the Owner in the Limitation Action and that the Arrest Action should be stayed after security is posted pending the outcome of the limitation case or further order of the court. The stay of the Arrest Action during the pendency of the Limitation Action avoids any risk of the Owner having to provide "double security" since the letter of undertaking that Wilmington Tug is prepared to accept as security for the release of the vessel expressly states that the insurer's payment obligations are not triggered unless or until a judgment is entered in the Arrest Action – it cannot serve as security for any judgment in the

Limitation Action. Simply put, Wilmington Tug has made it abundantly clear that the security which it seeks in the Arrest Action is contingent only and is not duplicative of any security available through the Limitation Action.

The security in the Arrest Action is required to secure and preserve the Court's *in rem* jurisdiction over the CLARY in that action, to give effect to Wilmington Tug's valid maritime lien, and to provide financial security for Wilmington Tug's claims if subsequent events require Wilmington Tug to prosecute its claims against the CLARY in the Arrest Action. There are various circumstances under the law of shipowner's limitation of liability which could result in a decision by this Court to dismiss the vessel owner's Limitation Action or to vacate the customary injunction against suits outside of the limitation action and direct the parties to prosecute their claims elsewhere. If no security for Wilmington Tug's claims is posted in the Arrest Action and the Limitation Action is later dismissed or the court directs the claimants to pursue their claims outside of the limitation case by dissolving the injunction, Wilmington Tug will be deprived of a lawsuit to pursue its *in rem* claims against the CLARY because *in rem* jurisdiction will have been relinquished by the Court.

Moreover, like many foreign ocean-going vessels, the CLARY is almost certainly the sole asset of its owning company, a foreign corporation (Singapore). If security is not posted in the arrest action and the vessel is released, it could be sold at any time or the company could be liquidated before Wilmington Tug is in position to enforce a judgment in its favor. By the time a judgment is obtained there may be no assets against which to enforce a judgment.

Ultimately, the issue is whether the CLARY's Owners can secure the release of CLARY in the in rem action by filing a bond in the limitation action. Allowing the owners to do this would contravene and jeopardize the valid *in rem* jurisdiction obtained by Wilmington Tug when it arrested the CLARY. This is because Owners control the limitation action. For instance, if Owners later determined that the amount of all claims did not exceed the value of the vessel, they could simply dismiss their limitation action and withdraw the limitation bond. This would effectively destroy Wilmington Tug's *in rem* jurisdiction over CLARY, unless the court were to rule that the limitation bond must also serve as the arrest bond and cannot be withdrawn (regardless of the status of the limitation action) until the resolution of Wilmington Tug's *in rem* claim against CLARY.

A recent decision filed on October 14, 2005 in the Eastern District of Louisiana considers the distinction between a special bond securing the claim of one party in an *in rem* arrest proceeding and the general bond filed to secure all claimants in an *in personam* limitation proceeding. El Paso Production Gom, Inc., 2005 U.S. Dist. LEXIS 36483 (E.D.La. 2005). There, the owners attempted to have the Letter of Undertaking which was issued to secure the release of the vessel also serve as the general bond in the limitation proceeding. The court denied the request, noting that the two types and purposes of security were different. The court noted that if limitation were ultimately denied to the owners, the stay of the *in rem* arrest action would be lifted and the claimant who had arrested the vessel would be able to continue with the arrest and was entitled to rely upon the specific security posted in the *in rem* arrest action.

PBH: 180641.1

-3-

In <u>Petition of Marsuerte Compania Naviera</u>, S.A., 252 F. Supp. 279 (S.D.N.Y. 1966), the district judge lifted the restraining order in a limitation proceeding to allow claimants to attach the hull insurance proceeds from the vessel, which had sunk as a result of the casualty. The Court noted that "had claimants known of the hull insurance before the petition for limitation of liability was filed in this court, they would have been free to attach the proceeds. Had they done so, the restraining order would only have stayed the attachment and not vacated it, so that they would have had resort to the proceeds if the petition for limitation of liability were ultimately denied." <u>Id.</u> at 280. The court went on to note that the vessel was the owner's only real asset and the court was concerned that if the hull proceeds were not attached, they would be removed from the jurisdiction and work prejudice on the claimants. Likewise, here, it appears that the vessel is the owner's only real asset, and unless Wilmington Tug is provided a letter of undertaking or bond securing their *in rem* interests in the vessel, they will be prejudiced.

For the foregoing reasons, Wilmington Tug respectfully requests the Court to deny any request by the Owner of the CLARY for release of the vessel from the arrest in C.A. No. 1:06-cv-00015 and to direct that security must be provided to Wilmington Tug in that action before the arrest will be lifted and the vessel permitted to depart this Judicial District.

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

By: _____
Michael B. McCauley

MMC:lr